# IN THE SUPREME COURT OF CALIFORNIA

DEBORAH SASS,
Plaintiff and Respondent,

v.

THEODORE COHEN,
Defendant and Appellant.

S255262

Second Appellate District, Division Two
B283122

Los Angeles County Superior Court
BC554035

_____

December 24, 2020

Chief Justice Cantil-Sakauye authored the opinion of the Court, in which Justices Corrigan, Liu, Cuéllar, Kruger, Groban, and Guerrero* concurred.

_____

*   Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

SASS v. COHEN

S255262


Opinion of the Court by Cantil-Sakauye, C. J.


Section 580, subdivision (a) of the Code of Civil Procedure provides that "[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint . . . ."[1] Thus, "in all default judgments the demand sets a ceiling on recovery," and a judgment purporting to grant relief beyond that ceiling is void for being in excess of jurisdiction. (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 824 (*Greenup*).) In an accounting action, however, a plaintiff does not know the sum certain owed by the defendant. (See, e.g., *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179 (*Teselle*) ["An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation"].) As such, a complaint seeking an accounting cannot state the precise amount of damages sought.

At issue in this case is how to reconcile the restrictions of section 580 with the limitations inherent in an action for accounting. Specifically, we must resolve whether a court may award monetary damages in a default judgment to a plaintiff who seeks an accounting when the complaint does not demand a specific amount of monetary damages but instead asserts a proportional interest in specified property.

---

[1] All further unspecified statutory references are to the Code of Civil Procedure.

1

Applying our usual rubrics of statutory construction, we conclude that in cases where plaintiffs seek monetary relief, the mere fact that they have pleaded an accounting action does not insulate them from the obligation to notify defendants of the dollar amounts sought before such relief may be granted in default. True, the text of section 580 does not point unerringly to this result. Nonetheless, when section 580 is considered in light of its purpose — "to guarantee defaulting parties adequate notice of the maximum judgment that may be assessed against them" (*Greenup*, *supra*, 42 Cal.3d at p. 826) — and in conjunction with other statutes related to pleadings and default judgments, we find the most reasonable interpretation of section 580 is that it requires plaintiffs to have alleged their "relief" in terms of dollars if they are to receive monetary recovery. (§ 580, subd. (a).)

Our conclusion is bolstered by other considerations. Among these is the recognition that despite their relative lack of knowledge about the precise amounts owing, plaintiffs bringing accounting claims (1) are generally able to estimate their damages, (2) must ultimately prove the sums to which they are entitled after default, and (3) may request that the trial court take an accounting in circumstances where an accounting is necessary to discover the information needed to determine the amount owing. In other words, plaintiffs' inability to state a precise amount of damages does not justify allowing pleadings that, in the event of defaults, will not have apprised defendants of the maximum dollar amounts to which they may be held liable.

Accordingly, we hold, consistent with the Court of Appeal below, that a plaintiff seeking an accounting is not excused from section 580's requirement to state a specific dollar amount to

support a default judgment granting monetary relief. In particular, it is not enough that the complaint identifies the assets in a defendant's possession and requests some fraction of their value.

The Court of Appeal reached a second, subsidiary issue as to which we also granted review: the proper method by which a court determines whether the amount awarded in a default judgment exceeds that demanded. (See *Sass v. Cohen* (2019) 32 Cal.App.5th 1032, 1035 (*Sass*) [holding that "the amounts of damages awarded and demanded are to be compared on an aggregate basis"].) On closer examination, however, we find we need not resolve that question in order to dispose of the matter before us. As we shall explain, neither the trial court's nor the Court of Appeal's calculation of damages implicated the aggregate versus claim-by-claim subsidiary issue. This case does not raise that question, and although we offer some words of guidance to the courts, we reserve judgment on that issue for another day.

## I. BACKGROUND

The facts of this case are taken from plaintiff Deborah Sass's second amended complaint, the operative pleading upon which she obtained a default judgment. (See, e.g., *Title Ins. & Trust Co. v. King Land & Improv. Co.* (1912) 162 Cal. 44, 46 (*Title Insurance*) [" 'A default confesses all the material facts in the complaint' "]; 7 Witkin, Cal. Procedure (5th ed. 2019) Proceedings Without Trial, § 176 ["the defendant's failure to answer has the same effect as an express admission of the matters well pleaded in the complaint"].)

In 2006, while still married, defendant Theodore Cohen met and began a romantic relationship with plaintiff. In an

attempt to persuade plaintiff to move to Los Angeles with him, Cohen made a number of promises. Plaintiff committed to moving after reaching an "agreement" with Cohen that he "would pay for all her living expenses for the rest of her life" and that "all property and income acquired by them during their relationship would be joint property." During this time, Cohen told plaintiff he was "buying us a house." Cohen then proceeded to purchase a property on Hollywood Boulevard (the Hollywood property).

A short time thereafter, plaintiff moved to Los Angeles. Cohen initially kept his promises, including by providing plaintiff with a credit card and paying "all of the bills and all of Plaintiff's expenses." Cohen also formed a company, Tag Strategic LLC (Tag). Plaintiff "help[ed] out" at Tag, generating through her efforts "approximately $1.4 million revenue for Tag." Despite her work, Cohen did not share Tag's profits with plaintiff. Instead, he told her he "was going to pay her $5,000 a month as a 'token gesture.'" Cohen, however, did not honor that promise and instead paid plaintiff $2,000 a month for a span of ten months.

By April 2011, plaintiff had become dissatisfied with the relationship and left Los Angeles. In response to Cohen's importuning her to return, plaintiff sent Cohen an e-mail with "a list of items that needed to be satisfied for her to consider returning to him." Cohen "agreed to Plaintiff's list." Plaintiff understood from this that "Tag would be owned 50% by her and Cohen, equally, as was all of the other income and property obtained during the relationship."

Mollified, plaintiff returned to Los Angeles, at which point Cohen told her, "I am buying you a house." Cohen then

purchased a house located on Oakley Drive (the Oakley property). Sometime thereafter, Cohen sold the Hollywood property. "Upon information and belief," plaintiff alleged that Cohen "made a profit of more than $300,000" from the sale.

At around the same time that Cohen bought the Oakley property, plaintiff "purchased $25,000 worth of Class B shares in Rock & Reilly's LLC," a company located in Los Angeles. Although plaintiff made the purchase, the shares were held in Cohen's name.

Despite the couple's various financial entanglements, Cohen still had not divorced his wife. In December 2012, plaintiff moved out of the Oakley property. For a while thereafter, Cohen "continued to perform his agreement to provide Plaintiff with financial support and pay all of her expenses." Eventually, Cohen stopped paying. Plaintiff sued.

Plaintiff's complaint, brought against Cohen, Tag, and multiple Doe, alleged seven causes of action. The first asserted that Cohen breached the couple's so-called *Marvin* agreement, or a contract between nonmarital partners. (See *Marvin v. Marvin* (1976) 18 Cal.3d 660, 665 (*Marvin*) [holding that "courts should enforce express contracts between nonmarital partners"].) Although demanding consequential damages for that breach "in an amount to be determined at trial," plaintiff also requested "a constructive trust over (1) all of the property purchased during the term of the relationship, (2) all of the income earned by Tag since May 30, 2006, and (3) all income earned by [Cohen] since May 2006."

Plaintiff's second cause of action was brought against Tag for its "failure to pay wages." Plaintiff also brought a claim for the "waiting time penalties" she alleged she was "entitled to

[under] Labor Code § 203, equal to thirty (30) days wages." Plaintiff next asserted a claim for quantum meruit against all defendants, seeking to "recover the reasonable value of the services she provided to Tag."

Plaintiff's next claim is the focus of this case. In this cause of action, she demanded "an accounting of all property purchased and income earned during the relationship, including but not limited to: (1) the Hollywood House, (2) the Oakley House, (3) the Rock & Reilly stock, (4) Tag, and (5) all income earned by [Cohen]."

Plaintiff's final causes of action were for fraud and fraudulent transfer of assets from Tag to Cohen. She alleged within these causes of action that Cohen "repeatedly" made false representations to her. As a result of Cohen's misrepresentations, plaintiff asserted she "suffered actual damages in a sum to be determined at trial, which Plaintiff alleges is in excess of at least the sum of $700,000, which represents 50% of the revenue brought to Tag by Plaintiff, along with an unknown sum which represents 50% of all profits earned by Tag, and the additional sum of no less than $3,000,000, which represents 50% of the fair market value of (a) the Hollywood House received by defendant Cohen when he sold that house without Plaintiff's consent, and (b) the Oakley House." In addition to her actual damages, plaintiff prayed for "special damages in a sum to be determined at trial."

Plaintiff included a prayer for relief in her complaint, but the prayer did not state any specific dollar figures. Instead, the complaint asked for damages "in a sum to be proven at trial." Plaintiff served the complaint on Tag and Cohen and subsequently served Cohen "a notice of punitive damages in

6

which she 'reserve[d] the right to seek $4,000,000 in punitive damages.' " (*Sass, supra*, 32 Cal.App.5th at p. 1037.)

Defendants failed to respond to the complaint. After the entry of default, the trial court held a prove-up hearing at which plaintiff introduced the testimony of a forensic accountant to prove her damages. (*Sass, supra*, 32 Cal.App.5th at pp. 1037–1038.) The court ultimately awarded plaintiff the following: (1) $126,504 as plaintiff's 50 percent share in the profits from the sale of the Hollywood property; (2) $2,099,610, or half the value of Tag, calculated via a "discounted cash flow approach of valuation"; (3) $444,918, which is "one-half of the balance of the funds remaining in the accounts" of Tag, an amount the court awarded "for the breach of the agreement to share 50% of the income received by Tag"; (4) $120,000 as unpaid wages for the work plaintiff performed; (5) $5,000 in waiting time penalties; and (6) $10,500 as compensation for the investment in Rock & Reilly's LLC. In addition, the court declared a constructive trust over the Oakley property, ordering Cohen to transfer to plaintiff a 50 percent interest in the property. The court also awarded plaintiff $88,984 in punitive damages, a sum amounting to ten percent of Cohen's "balance in [various] bank accounts," which the court took as a proxy for Cohen's net worth. Finally, the court awarded prejudgment interest and costs.

The court denied plaintiff some of the relief sought. Most notably, the court held that because plaintiff had pleaded that she was a salaried employee of Tag, she was not entitled to the $700,000 she asserted was the half of "the business she 'brought in' to Tag."

Three months after the default judgment was entered, Cohen filed a motion to vacate the entry of default and default

judgment. Cohen argued that the judgment was void because the sum granted in default exceeded what was demanded in the complaint. The trial court denied the motion on the ground that "it has been held [in *Cassel v. Sullivan, Roche & Johnson* (1999) 76 Cal.App.4th 1157] where a plaintiff alleges a cause of action for accounting and knowledge of the debt due is within the possession of the defendant, there is no notice requirement for damages sought before entry of default judgment."

Cohen appealed, arguing that contrary to *Cassell*, he was entitled to such notice. The Court of Appeal agreed, holding that "actions alleging an accounting claim . . . are not excused from limitations on default judgments," which means such judgments may not "be entered for an amount in excess of the demand in the operative pleadings." (*Sass*, *supra*, 32 Cal.App.5th at p. 1035.) The court acknowledged that *Cassel* held otherwise, but after a careful examination of the case, the court "join[ed] the growing majority of cases rejecting *Cassel*." (*Id.* at p. 1043.)

The Court of Appeal thus reversed the trial court and vacated its default judgment. (*Sass*, *supra*, 32 Cal.App.5th at p. 1047.) The appellate court also recomputed the amount of damages plaintiff could recover. Of note, unlike the trial court, the Court of Appeal concluded that plaintiff was entitled to collect the $700,000 referenced in the complaint, conceptualizing it as the demand she had made "for the value of Tag." (*Id.* at p. 1046.) It remanded the case "with instructions for the trial court to exercise its discretion whether to (1) reinstate the default judgment after reducing the amount of compensatory damages awarded [in accordance with the Court of Appeal's holding and calculations], or (2) vacate the underlying default and allow plaintiff to file and serve an

amended complaint demanding the type and amount of relief she seeks." (*Id.* at pp. 1047–1048.)

In light of the conflict between *Cassel* and the decision below, we granted review.

## II. DISCUSSION

### A. Whether Section 580 Bars Monetary Recovery When a Plaintiff Bringing an Accounting Action Fails To Plead a Specific Amount of Damages

Determining how section 580 applies to an accounting action requires us to grapple with several strands of law, including the nature of accounting actions, the constraints of section 580, and our own authorities. We examine the threads individually before proceeding to weave them together.

#### 1. *An action for an accounting*

An action for an accounting has two elements: (1) "that a relationship exists between the plaintiff and defendant that requires an accounting" and (2) "that some balance is due the plaintiff that can only be ascertained by an accounting." (*Teselle*, *supra*, 173 Cal.App.4th at p. 179; see also 5 Witkin, Cal. Procedure*, supra*, Pleading, § 820.) The action carries with it an inherent limitation; an accounting action "is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation." (*Teselle*, at p. 179; see also *St. James Church of Christ Holiness v. Superior Court of Los Angeles County* (1955) 135 Cal.App.2d 352, 359.)

An action for an accounting has been characterized as "a means of discovery." (*Teselle*, *supra*, 173 Cal.App.4th at p. 180 ["the purpose of the accounting is, in part, to discover what, if any, sums are owed to the plaintiff, and an accounting may be used as a discovery device"].) This characterization is consistent

with the idea that a plaintiff seeking an accounting cannot "allege[] the right to recover a sum certain" because he or she lacks the information necessary to determine the precise amount that may be due. (*Id.* at p. 179.) The plaintiff's lack of knowledge drives the need for discovery; and the fact that the gap can be filled via discovery implies the information is within the control of the defendant. In other words, the defendant in an accounting action possesses information unknown to the plaintiff that is relevant for the computation of money owed.

Although we infer that a defendant in an accounting lawsuit has pertinent private information, there are limits to this inference. We do not know that a defendant will always have all the information necessary to compute the amount owing to the plaintiff. (See *Warren v. Warren* (2015) 240 Cal.App.4th 373, 378–379 (*Warren*) [noting that "[*g*]*enerally*, the defendant, not the plaintiff, in an accounting action has the information necessary to determine its liability for damages," and "[*g*]*enerally*, the plaintiff does not have equal access to that information" but finding that the case before the court "does not fall under that general rule" (italics added)].) Plaintiff in this case, although pleading for an accounting and alleging that the assets are in Cohen's possession, acknowledges that such allegations give rise only to the assumption that Cohen "has knowledge of the property as great, or greater than, that of . . . plaintiff." Even by plaintiff's reckoning then, accounting actions subsume cases in which the parties possess equal amounts of information.

In short, the underpinning of an accounting action is an information asymmetry between the parties, an asymmetry that generally favors the defendant but never the plaintiff. Our goal

is to probe the consequences of this asymmetry in the context of defaults.

### 2. *Section 580 and related statutes*

Section 580 is one of several statutory provisions governing default. In relevant part, it states: "The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115; but in any other case, the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue." (§ 580, subd. (a).)

Section 580, subdivision (a) thus specifies two instances in which the relief awarded in a default judgment is not limited to "that demanded in the complaint": those that fall within the scope of section 425.11 or 425.115. Section 425.11 controls actions "to recover damages for personal injury or wrongful death." (*Id.*, subd. (b).) In such actions, "the amount demanded shall not be stated" in a complaint.[2] (§ 425.10, subd. (b).) Instead, the plaintiff must serve on the defendant "a statement setting forth the nature and amount of damages being sought." (§ 425.11, subd. (b).) As is relevant here, the plaintiff must serve such a statement of damages "before a default may be taken." (*Id.*, subd. (c).) Similarly, section 425.115 requires a plaintiff seeking punitive damages to serve upon the defendant a form statement "or its substantial equivalent" that gives the defendant notice of the specific amount of punitive damages

---

[2]     The purpose behind this rule is to " 'protect the defendants from adverse publicity resulting from inflated demands, particularly in medical malpractice cases.' " (*Schwab v. Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 431.)

sought.[3]  (§ 425.115, subd. (b).)   As with section 425.11, the statement contemplated by section 425.115 must be served "upon the defendant . . . before a default may be taken." (§ 425.115, subd. (f).)

Section 580, subdivision (a)'s requirement that the relief granted "cannot exceed that demanded in the complaint" is echoed by other statutory provisions.   Section 425.10, for instance, sets forth "the front-end statutory requirements for pleading" that are enforced by the "back-end limitations" imposed by section 580.   (*Sass, supra*, 32 Cal.App.5th at p. 1040.)   Section 425.10 stipulates that a complaint "shall contain . . . [a] demand for judgment for the relief to which the pleader claims to be entitled." (*Id.*, subd. (a)(2).)  Moreover, "[i]f the recovery of money or damages is demanded, the amount demanded shall be stated."[4]  (§ 425.10, subd. (a)(2).)

---

[3]   The form statement laid out in section 425.115 looks like this:

> NOTICE TO _____ (Insert name of defendant or cross-defendant):   _____  (Insert name of plaintiff or cross-complainant) reserves the right to seek $_____ (Insert dollar amount) in punitive damages when _____ (Insert name of plaintiff or cross-complainant) seeks a judgment in the suit filed against you.

> (Insert name of attorney or party appearing in propria persona)

> (Date)

(*Id.*, subd. (b).)

[4]   An exception to this requirement applies when an action "is brought to recover actual or punitive damages for personal injury or wrongful death." (§ 425.10, subd. (b).)  In such a case,

Section 585, which describes the procedure for obtaining a default judgment, contains similar language. The section divides cases in which "the defendant fails to answer" into different categories. (§ 585.) In "an action arising upon contract or judgment for the recovery of money or damages only," when the defendant has been served "other than by publication," "the clerk, upon written application of the plaintiff . . . shall enter the default of the defendant . . . and immediately thereafter enter judgment for the principal amount demanded in the complaint, in the statement required by Section 425.11, or in the statement provided for in Section 425.115 . . . ." (*Id.*, subd. (a).) Thus, in a case in which the amount of damages is immediately ascertainable, the default and default judgment are entered by the clerk, almost simultaneously, "for the principal amount demanded in the complaint" or in a statement of damages. (*Ibid.*)

In all other cases, a plaintiff must seek a default judgment from the court. In such cases, "[t]he court shall hear the evidence offered by the plaintiff, and shall render judgment in the plaintiff's favor for that relief, not exceeding the amount stated in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115, as appears by the evidence to be just."[5] (§ 585, subd. (b); see also

_____

the amount of damages must be set out, not in a complaint, but in a statement of damages in accordance with sections 425.11 and 425.115. (See §§ 425.11, 425.115.)

[5] Subdivision (b) of section 585 also mentions "the taking of an account." (*Ibid.* ["If the taking of an account, or the proof of any fact, is necessary to enable the court to give judgment or to carry the judgment into effect, the court may take the account

*id.*, subd. (c).) Here too, the judgment rendered in default cannot "exceed[] the amount stated in the complaint" or the statement of damages. (§ 585, subd. (b).)

### 3. *Interpretative case law*

Turning now to the case law, we see that our decisions have consistently demanded a "strict construction" of section 580 — a construction that is informed by the text of section 580, the language of surrounding pertinent provisions, and the animating purpose of the statute. (*Greenup, supra*, 42 Cal.3d at p. 826.)

We begin our overview of the case law with *Burtnett v. King* (1949) 33 Cal.2d 805 (*Burtnett*). There, we held that a complaint in which the plaintiff identified certain real estate as " 'the community property of plaintiff and defendant' " (*id.* at p. 806) but failed to request that the community property "be awarded to anyone" (*ibid.*) did not give the defendant "notice or warning that the property would be affected by a default judgment" (*id.* at p. 811). Accordingly, the trial court — which had granted the plaintiff the property — "wholly lacked jurisdiction to render [such] a judgment." (*Id.* at p. 807.) Our analysis quoted the text of sections 580 and 585, emphasizing that "[t]he statutes are very specific in their requirements for a judgment following a default." (*Burtnett,* at p. 806.) Given "the

_____

or hear the proof, or may, in its discretion, order a reference for that purpose. If the action is for the recovery of damages, in whole or in part, the court may order the damages to be assessed by a jury; or if, to determine the amount of damages, the examination of a long account is involved, by a reference as above provided."].) Neither of the parties relies on this language or suggests that this case implicates a reference for the "taking of an account" under this provision. (*Ibid.*)

mandatory language" of these provisions, "the court's jurisdiction to render default judgments can be exercised only *in the way authorized by statute*," and the court "cannot act except in a particular manner" so specified. (*Id.* at p. 807.) In short, a court has no power to enter a default judgment other than in conformity with the provisions governing default.

We next had occasion to interpret section 580 in *Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489 (*Becker*). The complaint filed in the case "sought damages 'in excess of $20,000 . . . or according to proof.' " (*Id.* at p. 491.) The plaintiffs argued that such a pleading "was sufficient under section 580 to provide adequate notice of defendants' potential liability for $26,457.50," which was the amount of compensatory damages the trial court awarded after default. (*Id.* at pp. 492–493.) We rejected the argument. "In effect," we said, "[the plaintiffs] argue that section 580 requires notice of the *type* of relief sought, but does not restrict the award of damages to the specific amount stated in the complaint." (*Id.* at p. 493.) That argument cannot prevail because "the language of section 580 does not distinguish between the type and the amount of relief sought." (*Ibid.*)

Our ruling rested not only on the text of section 580 but also its purpose and the language of other pertinent provisions, specifically, sections 425.10 and 585. Sections 425.10 and 585 both refer to the *amount* pleaded in the complaint and therefore "support the view that defaulting defendants should not be subject to damages in excess of an amount specifically set out in the complaint." (*Becker*, *supra*, 27 Cal.3d at p. 494 ["Section 425.10 requires that the amount of damages be pleaded in causes of action . . . . In actions other than at contract, section 585, subdivision 2, provides that a default judgment may be

awarded only 'for such sum (*not exceeding the amount stated in the complaint*)' "].)

Regarding the purpose of section 580, we stated that the primary intent of the provision "is to insure that defendants in cases which involve a default judgment have adequate notice of the judgments that may be taken against them." (*Becker*, *supra*, 27 Cal.3d at p. 493.) We explained that a prayer like that found in *Becker*, i.e., one that sought damages according to proof, "cannot insure adequate notice of the demands made upon the defendant." (*Id.* at p. 494.) We acknowledged that it might sometimes appear "reasonable" to find that such a prayer "provided adequate notice of a defaulting defendant's potential liability." (*Ibid.*) Yet, "no matter how reasonable it might appear in a particular case," "fundamental fairness" would be "undermined if the door were opened to speculation" regarding how such a prayer afforded requisite notice. (*Ibid.*) We thus held that "a prayer for damages according to proof passes muster under section 580 only if a specific amount of damages is alleged in the body of the complaint." (*Ibid.*)

We reiterated this principle in *Greenup*, *supra*, 42 Cal.3d 822. As we there stated, "no matter how reasonable an assessment of damages may appear in the specific case, we cannot open the door to speculation on this subject without undermining due process . . . ." (*Id.* at p. 829.) Moreover, adequate notice of the judgment that may be assessed in default is "a protection to which every defendant is entitled," even those who "deliberately thwarted [the opposing party's] discovery efforts." (*Ibid.*) Referring again to the "aim" of section 580 and "related sections," including sections 425.10 and 585, we said that these provisions are intended "to ensure that a defendant

who declines to contest an action does not thereby subject himself to open-ended liability." (*Greenup,* at p. 826.)

Along the same lines, we explained that a defendant has the right to choose to default, but the plaintiff must provide the defendant with notice of potential damages so that the defendant's choice is an informed one. (See *Greenup*, *supra*, 42 Cal.3d at p. 829.) We also made clear that the notice afforded to a defendant must be "formal notice of potential liability," which cannot be supplanted by "actual notice." (*Id.* at p. 826.)

Finally, our most recent case concerning the matter, *In re Marriage of Lippel* (1990) 51 Cal.3d 1160 (*Lippel*), offers a clear articulation of the significance of section 580. *Lippel* concerned a divorce obtained after the enactment of the Family Law Act. (Civ. Code, former § 4000 et seq.; see also *Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1121, fn. 5; *In re Marriage of Cantarella* (2011) 191 Cal.App.4th 916, 919, fn. 1.) When the plaintiff filed for dissolution, she used "a standard printed form petition, which was statutorily authorized, that provided blank spaces for the entry of certain statistical information and contained boxes to be checked to indicate what relief was being requested."[6] (*Lippel,* at p. 1163.) The plaintiff "checked the box that indicated she was requesting child custody" but left blank the box "relating to the issue of child support." (*Ibid.*) Under these circumstances, we found that the trial court's order requiring the defaulted defendant husband "to pay $100 per

---

[6] The current version of the standard form petition may be found on the judicial branch website. (Judicial Council Forms, form FL-100 <https://www.courts.ca.gov/documents/fl100.pdf> [as of Dec. 24, 2020] (hereafter Form FL-100).) All Internet citations in this opinion are archived by year, docket number and case name at <http://www.courts.ca.gov/38324.htm>.

month in child support" violated section 580. (*Lippel,* at p. 1164.)

Our decision in *Lippel* reinforced the principle that there was no exception to the requirements of section 580, save for those instances as to which the Legislature has manifested a clear intent to provide an exemption. In particular, *Lippel* refused to "perpetuate an exception to section 580 in [marriage] dissolution cases based on the idea that a prayer for general relief in such cases supports an award of support." (*Lippel, supra*, 51 Cal.3d at p. 1171.) A line of cases predating the Family Law Act had done just that, upholding default judgments awarding monetary support to former spouses even when the complaints did not demand such support or stated no amount that would be requested as support. (See, e.g., *Cohen v. Cohen* (1906) 150 Cal. 99, 101 [upholding a default judgment awarding wife $10 a month in alimony although the wife's prayer only requested "a divorce and . . . 'such other relief as may be just and meet in the premises and within the jurisdiction of the court' "]; *Horton v. Horton* (1941) 18 Cal.2d 579, 583 ["it is our opinion that the judgment awarding to the wife $200 per month . . . was directly responsive to the wife's prayer for reasonable sums for support and maintenance . . . and as so framed this judgment cannot be said to transgress the limitation of section 580"].) *Lippel* concluded that the "continued validity [of such decisions] can no longer be supported." (*Lippel, supra*, 51 Cal.3d at p. 1169.)

The above survey reveals that section 580 has been interpreted strictly, "in accordance with its plain language," in conformance with its purpose, and as informed by other statutory provisions governing default. (*Lippel, supra*, 51 Cal.3d at p. 1166.) Applying such a construction, we have

never (outside the marriage dissolution context) upheld a default judgment under section 580 that awarded compensatory damages in excess of the dollar amount demanded in the operative pleading. The question before us is whether an accounting action is sufficiently unique to warrant different treatment.

### 4. *Synthesis*

In reconciling section 580's constraints with the nature of an accounting action, we begin with the text of the statute itself. (See, e.g., *Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856 [" ' "When we interpret a statute, . . . '[w]e first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. . . . If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " ' "].) As noted, section 580 states in relevant part that "[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115 . . . ." (*Id.*, subd. (a).) On its face, section 580 simply refers to "[t]he relief . . . demanded in the complaint" and does not directly resolve the question of whether a plaintiff alleging an accounting action must plead a dollar amount to recover monetary relief in case of default. (*Ibid.*)

This does not mean, however, that section 580 affirmatively sanctions default judgments awarding money

damages when the operative pleading omits the amount demanded. Because section 580 is not limited to complaints in which money is requested, the Legislature's use of the broad term "relief" is understandable. After all, in cases in which only equitable relief is prayed for, "[t]he relief granted to plaintiff[s]" would not encompass any money judgment (*ibid.*), and, as such, it would not make sense to say in those circumstances that "[t]he amount granted to plaintiffs . . . cannot exceed that demanded in the complaint." In other words, because the Legislature did not separately address instances in which money damages are at stake in drafting section 580, it is sensible that the statute uses the more encompassing word "relief."

The language of section 580 itself is nonetheless revealing. It points us to two additional statutory provisions, sections 425.11 and 425.115. When we examine these provisions, which deal specifically with situations in which monetary relief is requested, we see that the statutes require plaintiffs to give notice to the defendants of the "amount" sought. (See § 425.11, subd. (b) ["When a complaint is filed in an action to recover damages for personal injury or wrongful death, the defendant may at any time request a statement setting forth the nature and amount of damages being sought"]; § 425.115, subd. (b) [directing plaintiffs who seek punitive damages to serve upon defendants a statement that requires the insertion of a dollar figure as the amount demanded, or the "substantial equivalent" of such a statement]; § 425.115, subd. (c) [referring to "the amount set forth" in the statement described in subd. (b)].) Section 425.115 is especially clear that by the term "amount," the Legislature means a dollar amount. (See § 425.115, subds. (b), (c).) When section 580 is read in conjunction with sections 425.11 and 425.115, the prohibition imposed by section 580 is

apparent: The amount of monetary relief awarded in default — whether as compensation in personal injury or wrongful death actions or as punitives — cannot exceed the amount demanded in the statement of damages.

Although sections 425.11 and 425.115 address a narrow set of cases (those involving personal injury, wrongful death, or punitive damages), the requirement that plaintiffs put defendants on notice of "the amount demanded" is much broader. (§ 425.10, subd. (a)(2).) Section 425.10 addresses the content of complaints in general and requires that "[i]f the recovery of money or damages is demanded, the amount demanded shall be stated" in the complaint. (§ 425.10, subd. (a)(2); see also § 425.10, subd. (b) [exempting cases covered by §§ 425.11 or 425.115].) Again, when sections 425.10 and 580 are considered together, section 580 is reasonably understood to require that the amount of damages granted in default shall not exceed "the amount demanded" in the complaint. (§ 425.10, subd. (a)(2); see also *Greenup, supra*, 42 Cal.3d at p. 827 ["It would undermine this concern for due process [inhering in the requirement that plaintiffs put defendants on formal notice of their demands] to allow the [default] judgment herein to stand despite plaintiff's failure to meet the requirements of sections 425.10 or 425.11"].)

The meaning of section 580 is likewise illuminated when we consider section 585. (Accord *Burtnett, supra*, 33 Cal.2d at p. 806 [interpreting § 580 in conjunction with § 585]; *Becker, supra*, 27 Cal.3d at p. 494; *Greenup, supra*, 42 Cal.3d at p. 826.) As mentioned, section 585 articulates the procedures by which a default judgment may be entered against a defendant. Subdivision (a) of section 585 allows the clerk, in certain instances, to "enter judgment for the principal amount

demanded in the complaint." The statute thus makes clear that should a plaintiff seek "the recovery of money," he or she must have demanded a "principal amount" of damages in the operative pleading. (§ 585, subd. (a).) Moreover, because the clerk is able to simply enter the judgment "for the principal amount demanded," it appears inescapable that the "amount demanded" refers to a dollar amount. (*Ibid.*)

Because the word "amount" carries this meaning in subdivision (a) of section 585, we infer that it carries the same meaning when used in subdivision (b). (See, e.g., *People v. Roberge* (2003) 29 Cal.4th 979, 987 [" ' " ' "identical words used in different parts of the same act are intended to have the same meaning" ' " ' "].) Subdivision (b) addresses those instances where, as here, the court enters the default judgment. Subdivision (b) provides that in the case of a default, "[t]he plaintiff thereafter may apply to the court for the relief demanded in the complaint. The court shall hear the evidence offered by the plaintiff, and shall render judgment in the plaintiff's favor for that relief, not exceeding the amount stated in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115, as appears by the evidence to be just." Subdivision (b) thus equates the "relief demanded in the complaint" with "the amount stated in the complaint," indicating that when money damages are involved, the two terms mean the same thing. And, as we have inferred from the textual evidence, the word "amount" in this context means "dollar amount." In short, when money damages are involved, section 585, subdivision (b) is best understood to mean that in the case of a default, the court shall render judgment for an amount proved by evidence, so long as that sum

does not exceed the dollar amount stated in the complaint or statement of damages.

Ironically, plaintiff points us to a 2007 amendment to section 585 that only bolsters this conclusion. (Assem. Bill No. 310 (2007–2008 Reg. Sess.).) Prior to the 2007 amendment, section 585 stated, "The plaintiff [after an entry of default] may apply to the court for the relief demanded in the complaint; the court shall hear the evidence offered by the plaintiff, and shall render judgment in his or her favor for such sum (not exceeding the amount stated in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115), as appears by such evidence to be just." (§ 585, former subd. (b).) Plaintiff concedes that the term "such sum" as employed by the statute "refer[s] . . . to a dollar figure." However, because that term was removed and replaced with "the relief," plaintiff contends that section 585 no longer requires her to plead "a dollar figure." (See § 585, subd. (b).) The legislative history materials behind the 2007 amendment, however, make clear that the amendment effected only "technical and minor changes." (Legis. Counsel's Dig., Assem. Bill No. 310 (2007–2008 Reg. Sess.), 5 Stats. 2007, Summary Dig., p. 126.) As such, insofar as the term "such sum" references a dollar amount, so does the term "the relief" as set out in the current version of section 585.

The standard forms that litigants must file for entry or judgment of default or to state damages in accordance with section 425.11 reflect the same reading of the statutes. (See Judicial Council Forms, form CIV-100 <https://www.courts.ca.gov/documents/civ100.pdf> [as of Dec. 24, 2020]; Judicial Council Forms, form CIV-050 <https://www.courts.ca.gov/documents/civ050.pdf> [as of

Dec. 24, 2020].) These forms, which must be completed and filed before default may be taken, make clear that plaintiffs are required to state a specific dollar amount as the relief demanded.

To summarize, section 580 speaks of the "[t]he relief . . . demanded in the complaint." (*Id.,* subd. (a).) When monetary relief is involved, we have seen that the term "relief demanded" means the "amount demanded." Furthermore, the most natural interpretation of "amount" is "dollar amount." As such, in cases in which a plaintiff seeks money damages, section 580 limits a plaintiff's relief in default to the dollar amount that has been demanded in the operative pleading.

Plaintiff reads the statutes differently. In her reply brief, she argues that because the various statutes refer to the "amount demanded" or "principal amount demanded" instead of "dollar amount," they do not "preclude stating the amount in other terms [than dollars], such as those used here: the value or a stated portion of the value of a specific piece of property." We are not persuaded. Not only does such a reading seem less consistent with the language of the pertinent provisions, but it is also poorly suited for advancing the purpose of section 580. That purpose — as our cases have reiterated — "is to insure that defendants in cases which involve a default judgment have adequate notice of the judgments that may be taken against them." (*Becker*, *supra*, 27 Cal.3d at p. 493; see also *Greenup*, *supra,* 42 Cal.3d at p. 826.) In many circumstances, a request for "a stated portion of the value of a specific piece of property" will not enable defendants to ascertain their potential liability without the plaintiff providing an estimate of the value of the property.

To illustrate, suppose that a plaintiff alleges an accounting claim that seeks to recover 50 percent of a closely held company. That allegation would do little to inform defendants of "the maximum judgment that may be assessed against them." (*Greenup, supra,* 42 Cal.3d at p. 826.) Due to the lack of reliable market data, it can be difficult to value a closely held company. (See *In re Marriage of Micalizio* (1988) 199 Cal.App.3d 662, 673–674.) Defendants thus may be legitimately uncertain about the dollar value of their exposure. Moreover, in the absence of an agreed-upon market value, many factors could affect a person's perceived monetary value of the company, including varying accounting methodologies. (Barry M. Wertheimer, *The Shareholders' Appraisal Remedy and How Courts Determine Fair Value* (1998) 47 Duke L.J. 613, 629 ["Each appraisal technique is but a way of estimating the 'fair value' or 'true value' or 'intrinsic value' of a company, and undeniably, ' "[v]aluation is an art rather than a science." ' The valuation 'answer' given by each of these techniques is very dependent on the assumptions underlying the calculations employed."].) Because defendants cannot predict which methodology the plaintiff will select, such defendants would not have notice of the damages "that may be assessed against them." (*Greenup*, at p. 826.)

Although our analysis thus far has not touched on the accounting action, our conclusion remains the same when we take the elements of an accounting claim into consideration. As a preliminary matter, we observe that there is no inherent conflict between the requirements of section 580, as we have interpreted that provision, and the nature of an accounting action. As plaintiff admits, even though parties seeking an accounting cannot state a sum certain to which they are

entitled, they "are not precluded from providing an estimate of the maximum value they may recover." In other words, although a plaintiff bringing an accounting action is not able to say, "I am owed $7,248.61," there is nothing about the action that prevents him or her from pleading, "I believe I am owed an amount in the neighborhood of $10,000" — an allegation that would limit his or her recovery in case of default to $10,000. (See *Sass*, *supra*, 32 Cal.App.5th at p. 1043 ["Because a plaintiff's ability to estimate a maximum value does not preclude the necessity to fix the actual value, the nature of an accounting claim does not justify a departure from section 580's plain language"]; *Ely v. Gray* (1990) 224 Cal.App.3d 1257, 1262 (*Ely*) [observing that accounting "actions often include an estimate of the amount of money due the complaining party although an absolute amount is not specified"]; accord *San Pedro Lumber Co. v. Reynolds* (1896) 111 Cal. 588, 592 [averring in an action requesting an accounting " 'that plaintiff is unable to state the precise amount of the several items, but, according to his information and belief, charges that the full amount thereof equals in the aggregate sixty-five thousand dollars, or thereabouts' "]; *Brea v. McGlashan* (1934) 3 Cal.App.2d 454, 458–459 [describing similar pleading of a damages amount].)

Insofar as plaintiff's argument has bite, it rests largely on the fact that individuals alleging an accounting action lack the necessary information to compute their damages whereas the defendants in such actions may have that information. Under this view, it appears unjust to require plaintiffs to give defendants notice of their maximum exposure by pleading a specific amount of damages when plaintiffs do not know what that amount may be, but the defendants presumably do.

Although seemingly attractive, this argument fails for a number of reasons. First, because individuals need to include only an estimate of their maximum damages and plaintiffs alleging accounting claims have been able to include such an estimate in their complaints, this suggests that plaintiffs' relative lack of knowledge does not pose an insurmountable obstacle to such pleadings. (See, e.g., *Ely*, *supra*, 224 Cal.App.3d at pp. 1262–1263 ["A plaintiff may be able to include in the complaint or prayer for relief an estimate of the amount due him, be willing to be bound by that amount, and receive a default judgment limited to that amount. Such a situation seems to satisfy the due process notice requirement as well as the accounting requirement that plaintiff not be able to figure a specific amount."].)

Furthermore, plaintiffs in default cases must still prove their damages to obtain monetary recovery. (§ 585, subd. (b) [specifying that when a plaintiff applies to the court for a default judgment, "[t]he court shall hear the evidence offered by the plaintiff, and shall render judgment . . . as appears by the evidence to be just"]; see also, e.g., *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 288 [" 'damages must be proved in the trial court before the default judgment may be entered' "]; *Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1745 (*Ostling*) ["damages . . . despite default, require proof"]; *Barragan v. Banco BCH* (1986) 188 Cal.App.3d 283, 302 (*Barragan*) ["Plaintiffs in a default judgment proceeding must prove they are entitled to the damages claimed"].) Because relief awarded in default must be established by evidence, this means that all plaintiffs — even those alleging an accounting action — must at some point have a concrete idea of how much the defendants owe them. At this juncture, the information asymmetry inherent in

27

an accounting action does not appear to pose an obstacle to plaintiffs' ability to state a sum.

Accordingly, requiring accounting plaintiffs to plead a specific dollar amount to support a default money judgment is not obviously onerous or unjust. (See *Ely*, *supra*, 224 Cal.App.3d at pp. 1263–1264 ["We do not find such a requirement burdensome since a plaintiff must be able, as this plaintiff was, to prove some level of defendant's financial liability to receive an award of damages upon default"]; *Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1527 (*Van Sickle*) [following *Ely*]; *Finney v. Gomez* (2003) 111 Cal.App.4th 527, 544 (*Finney*) [same].) Plaintiffs can provide the required information in at least two ways: (1) by including an estimate of the amount of damages in the original complaint, "be willing to be bound by that amount, and receive a default judgment limited to that amount" (*Ely*, *supra*, 224 Cal.App.3d at p. 1262); or (2) by amending the complaint to state the amount of damages more accurately once they have gathered the necessary information to prove damages.[7]

It is true that amending complaints in this fashion would open the default and give defendants another opportunity to respond. (See, e.g., *Cole v. Roebling Constr. Co.* (1909) 156

---

[7]    *Ely* approved of a third option: the use of a statement of damages akin to those served in personal injury or wrongful death cases. (*Ely*, *supra*, 224 Cal.App.3d at p. 1263.) As the court below recognized, whether a statement of damages may be used when the plaintiff does not plead a personal injury or wrongful death action is an issue that has split the Courts of Appeal. (See *Sass*, *supra*, 32 Cal.App.5th at p. 1040, fn. 10.) Cohen has not pressed for this third option, and we do not address that issue here.

Cal. 443, 446 ["where, after the default of a defendant has been entered, a complaint is amended in matter of substance as distinguished from mere matter of form, the amendment opens the default, and unless the amended pleading be served on the defaulting defendant, no judgment can properly be entered on the default"]; *Engebretson & Co. v. Harrison* (1981) 125 Cal.App.3d 436, 440 ["An amendment which significantly increases the amount of damages sought is an amendment of substance which must be served before a default can be entered"]; *Ostling, supra,* 27 Cal.App.4th at p. 1744 [similar]; *Leo v. Dunlap* (1968) 260 Cal.App.2d 24, 28 [similar].) However, we do not find such a result discouraging, given that "the policy of the law [is] to favor, wherever possible, a hearing on the merits . . . ." (*Weitz v. Yankosky* (1966) 63 Cal.2d 849, 854 (*Weitz*) [making this statement in the context of vacating a default].) When individuals amend their complaints to incorporate new information, it is reasonable to permit the targets of those complaints to answer, and by so doing, allow the litigation to proceed to "a hearing on the merits." (*Ibid.*) The alternative — permitting plaintiffs to proceed straight to default without putting defendants on notice of sums that plaintiffs will claim are owing — would be contrary to the purpose of section 580. (See, e.g., *Becker, supra,* 27 Cal.3d at p. 493.)

Second, not only has the Legislature forgone exempting accounting actions from the scope of section 580, it has made clear that plaintiffs pleading claims involving an information asymmetry like that found in accounting actions *are* required to give defendants notice of a specific amount of damages before a default may be taken. Recall that individuals who seek punitive damages must file a statement of damages in accordance with section 425.115. This statement, as can be seen from the

template set out in the provision, requires plaintiffs to state that they reserve the right to seek a maximum dollar amount as punitives. (§ 425.115, subd. (b).) Crucially here, an important factor in determining the proper amount of punitive damages is a defendant's financial condition. (See, e.g., *Adams v. Murakami* (1991) 54 Cal.3d 105, 109 [holding that "an award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition" and "the plaintiff rather than the defendant [is required] to introduce this evidence"]; *Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1185; *Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 928.) A defendant's financial wherewithal is information uniquely within a defendant's knowledge and likely unknown to a plaintiff. Yet despite plaintiffs' relative lack of knowledge and the difficulty some plaintiffs may experience in estimating their opponents' financial worth, the Legislature still requires all plaintiffs to inform the persons sued of the amount of punitive damages being sought. In the face of such legislative choices, we see no basis to infer that the Legislature intends for accounting actions to be treated differently merely because some accounting plaintiffs may likewise have difficulty approximating the amounts owing.

Third, a feature of California law makes notice of damages especially important for defendants contemplating default. Unlike federal law,[8] California law does not give defaulting

---

[8] See, e.g., Federal Rules of Civil Procedure, rule 8(b)(6) (28 U.S.C.) ["An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is

defendants the right to contest the amount of damages. Our authorities indicate that a defendant who defaults is "out of court" and not entitled to participate in the prove-up hearing. (*Christerson v. French* (1919) 180 Cal. 523, 525 ["A defendant against whom a default is entered is out of court and is not entitled to take any further steps in the cause affecting plaintiff's right of action"]; see also, e.g., *Title Insurance, supra*, 162 Cal. at p. 46 [same]; *Harbour Vista, LLC v. HSBC Mortgage Services Inc.* (2011) 201 Cal.App.4th 1496, 1502 [explaining that in "the ordinary default prove-up, . . . a defendant has no right to participate"]; *Garcia v. Politis* (2011) 192 Cal.App.4th 1474, 1479 ["a case in which a defendant's default has been taken necessarily has no adversarial quality and the defaulted defendant would have no right to participate in the motion"]; *Barragan, supra*, 188 Cal.App.3d at pp. 302–303 [despite ordering a second judgment hearing to ascertain the defendant's net worth, stipulating that the defendant "is not entitled to participate in any manner in the second judgment hearing"]; *Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 385 [stating that the defendant "having defaulted, knew it could not participate in a judgment hearing"];

required and the allegation is not denied"]; *Bonilla v. Trebol Motors Corp.* (1st Cir. 1998) 150 F.3d 77, 82 ["The ordinary rule is that a defaulting defendant is entitled to contest damages and to participate in a hearing on damages, should one be held"]; *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.* (2d Cir. 2012) 699 F.3d 230, 234 [similar]; *Geddes v. United Fin. Group* (9th Cir. 1977) 559 F.2d 557, 560 [similar]; 10 Moore's Federal Practice — Civil (2019) § 55.32 ["A party who defaults by failing to plead or defend does not admit the allegations in the claim as to the amount of damages. The claimant must establish the amount of damages, and the defaulting party is entitled to be heard on the matter."].

*Don v. Cruz* (1982) 131 Cal.App.3d 695, 702 [observing that the defaulting defendant "did not and could not participate in the judgment hearing"]; but see *Cassel v. Sullivan, Roche & Johnson, supra,* 76 Cal.App.4th at p. 1159 (*Cassel*) [noting, without comment, that a " 'prove-up' hearing was held, in which the [defendant] fully participated by presenting its own witnesses and evidence, and cross-examining [the plaintiff's] witnesses"].)  In light of the fact that defendants who are sued in California courts do not appear to have the right to contest damages after default, we must take special care to preserve the notice given to such defendants.

Finally, we are mindful that excusing accounting actions from the limitations on default judgments might encourage strategic pleading of such actions.  In this case, for example, plaintiff prayed for an accounting of both the Hollywood and Oakley properties.  Yet, given that sales of real estate are publicly recorded, the estimates of their market value are readily available, and plaintiff has pleaded she simply wants half the value of the properties (with no offsets for the fact that Cohen borne all the acquisition costs or any mention of differentiated maintenance costs), it is unclear why plaintiff needed an accounting from Cohen to estimate the amount of damages she was entitled to with regard to these assets.  Were we to rule for plaintiff, we would be giving her — and other litigants — an additional incentive to plead such an action, regardless of whether they are truly without means to estimate the amount of dollars owing.

For these reasons, we hold that to support a default judgment awarding monetary relief, a party alleging an accounting action must have included in the operative pleading an estimate of a specific amount of money.  We acknowledge that

in some cases plaintiffs may truly have no idea of the amount of damages they have suffered and can include no estimates of damages in their complaints. In such instances, we recognize the inequity to litigants who may be barred from recovery in default proceedings because they lack the knowledge to assess their damages.

Still, the inequity in such presumably unusual circumstances does not justify allowing *all* plaintiffs alleging an accounting action to sidestep the requirements of section 580 — and this is especially so when other mechanisms exist to ameliorate the unfairness that may inhere in some cases. When a defendant fails to answer a complaint that seeks an accounting but does not provide an estimate of damages, the trial court need not proceed straight to a prove-up hearing. Assuming that the plaintiff has demonstrated an entitlement to an accounting, the court can order an accounting. (See § 585, subd. (b); *Weiss v. Blumencranc* (1976) 61 Cal.App.3d 536, 538 [in a case in which the plaintiff sought dissolution of a partnership, appointment of a receiver, and an accounting, the court rendered a default judgment finding there was a partnership, appointing a receiver, "order[ing] a full accounting of all partnership assets . . . [and holding] in abeyance the determination as to punitive damages until the accounting of the assets of the partnership was completed"].) The accounting affords the plaintiff "a means of discovery," furnishing him or her with information to determine his or her damages. (*Teselle, supra,* 173 Cal.App.4th at p. 180.) In this way, a plaintiff's initial lack of knowledge

need not mean he or she is without remedy because of the defendant's default.[9]

Plaintiff urges us to a different conclusion. Her argument relies on a line of cases that began with *Lippel* and cumulated in *Cassel*. As noted previously, *Lippel* was a marriage dissolution case in which the plaintiff "initiated the action by filing a standard printed form petition." (*Lippel, supra*, 51 Cal.3d at p. 1163.) The issue in *Lippel* was whether, in checking and not checking certain boxes contained in the standard form, the plaintiff put the defendant on notice that she was seeking a particular type of relief (child support). (*Ibid.*) We did not there address whether such a plaintiff must, in addition to checking the box for child support, give notice of a specific amount of support sought (e.g., "$100 per month"). (*Id.* at p. 1164.) However, in explaining our holding regarding the type of relief requested, we said, "Coupled with the requirement that the respondent be served with a copy of the petition [citation], the manner in which these boxes are checked, or not checked, informs and puts the respondent on notice of what specific relief the petitioner is, or is not, seeking." (*Id.* at pp. 1169–1170.)

Seizing on this line, the Court of Appeal in *In re Marriage of Andresen* (1994) 28 Cal.App.4th 873 (*Andresen*) held that a plaintiff using a standard form petition to dissolve her marriage need only put the defendant on notice that she was seeking a

---

[9] Because the parties make no argument regarding the availability of such an accounting procedure, we do not further elaborate on its contours, including whether, following an accounting, a plaintiff would need to amend the complaint and thus reopen the default.

type of relief, and not a specific amount. (*Id.* at p. 879 ["due process is satisfied and sufficient notice is given for section 580 purposes in marital dissolution actions by the petitioner's act of checking the boxes and inserting the information called for on the standard form dissolution petition," which does not solicit specific dollar amounts].)

Plaintiff invites us to extend *Andresen* by applying it to her case. Just as the plaintiff wife in *Andresen* was not required to give the defendant husband notice of the amount of money damages sought, plaintiff argues that she — a litigant in an "accounting case also seeking equal division of the value of the property in the defendant's possession" — need not state a specific amount of damages in her complaint either.

Even if we assume that *Andresen* was correctly decided, the case is inapposite to the matter at hand. *Andresen* was a marriage dissolution action;[10] this litigation is not. Plaintiff and Cohen were never married, and when plaintiff sued Cohen, she did so by drafting a complaint, not by using a "standard printed form petition." (*Lippel, supra,* 51 Cal.3d at p. 1163; see also *Marvin, supra,* 18 Cal.3d at p. 665 ["[t]he provisions of the Family Law Act do not govern the distribution of property acquired during a nonmarital relationship; such a relationship remains subject solely to judicial decision"].) This difference is significant.

---

[10]    Even within the context of "a form complaint in a marital dissolution action," *Andresen* has not been uniformly applied. (*In re Marriage of Kahn* (2013) 215 Cal.App.4th 1113, 1119 [reasoning that "[i]t would be stretching *Andresen* too far to apply it in this case"].)

*Andresen* takes for granted that the "statutorily mandated form . . . does not provide the ability to indicate an exact amount" of relief sought. (*Finney, supra*, 111 Cal.App.4th at p. 537; see *Andresen, supra*, 28 Cal.App.4th at p. 879.) The implication is that a party using the standard form is not able to disclose such information. A plaintiff filing a complaint is not similarly constrained. Because a plaintiff using a complaint faces no legal and few practical impediments to stating the amount of damages, there is little reason to excuse the litigant from doing so.

Plaintiff protests that distinguishing marriage dissolution cases from accounting cases in this way "elevates form over substance." We do not think so. We are here called upon to interpret a statute to determine whether it applies to require a plaintiff seeking an accounting to plead a specific amount of damages to support a default judgment. The language of section 580 carves out no exception for such a litigant. Accordingly, for plaintiff's argument to prevail, she must point us to other indicia that the Legislature intended to treat accounting actions differently from other claims. (See *Lippel, supra*, 51 Cal.3d at pp. 1168–1171.) In the case of marriage dissolution, the Legislature has arguably manifested such an intent by "empower[ing] and direct[ing] the Judicial Council to create, as a substitute for the traditional complaint, a mandatory printed standard form petition." (*Id.* at p. 1169.) The Legislature has also specified that, unless otherwise agreed to by the parties, "the trial court . . . *must* value and divide the community estate of the parties equally." (*Andresen, supra*, 28 Cal.App.4th at p. 880; see Fam. Code, § 2550.) In so doing, the Legislature may have placed marriage dissolution actions outside the ambit of section 580. But the Legislature has not taken similar steps

with respect to accounting actions, and it is hardly an elevation of form over substance to find significance in such legislative choices.

Furthermore, the substance of accounting actions seeking equal division of property is not sufficiently analogous to a marriage dissolution such that those actions should be exempt from the strictures of section 580. To assert otherwise, plaintiff appears to make a two-step leap. First, she argues that an accounting action like the one she brought is, at its core, litigation over a breach of a *Marvin* agreement. Second, she asserts that litigation concerning a *Marvin* agreement is akin to a marital dissolution. Thus, she maintains, accounting actions under which plaintiffs seek half of specifically identified assets should be treated as if they are marital dissolution actions.

We reject plaintiff's argument. Breaches of *Marvin* agreements are not substantively the same as dissolutions of marriages. Litigation regarding *Marvin* agreements proceeds as a contract dispute. (See *Marvin*, *supra*, 18 Cal.3d at p. 684.) The terms of the parties' agreement — and not the default rules and presumptions of property ownership legislated in the Family Law Act — set the nonmarital couple's obligations. (*Marvin,* at p. 681.) In contrast to marital relationships, the Family Law Act imposes no presumption that property acquired during a nonmarital relationship is jointly owned or that upon dissolution of the relationship, the property is to be divided equally among the former partners. *Marvin* agreements, then, are insufficiently analogous to marriages in terms of their posttermination resolution to support a conclusion that they are exempt from section 580's requirement.

Moreover, even if we were to assume, arguendo, that accounting actions seeking half of identified assets are to be treated like marital dissolutions, plaintiff still has not persuaded us that she should prevail. After all, it is far from clear that a less onerous standard applies in marital dissolution cases, particularly given the current statutorily mandated forms and the statutory disclosure obligations governing marital dissolution actions.

True, marital dissolutions are subject to pleading requirements different from those imposed by section 425.10. More precisely, the current form governing marital dissolutions (Form FL-100) instructs the petitioner to identify assets without requiring information indicating the monetary value of those assets. Nonetheless, the form provides an option to list assets and debts in a property declaration.[11] The property declaration, Form FL-160, instructs that when used as an (optional) attachment to a petition or response, the party is to complete the portions of the form listing the assets and debts and proposal for division of those assets and debts in monetary terms (columns A and F). By contrast, when a party completes this form in connection with a request to enter default, all columns on the form must be completed, including the "date acquired," "gross fair market value," "amount of debt," "net fair market value," and, again, a proposal for division stated in dollars (columns B through F). (See Form FL-160.) In addition, with limited exceptions, a petitioner in a marital dissolution action is obligated to make extensive disclosures regarding all assets and

---

[11] Judicial Council Forms, form FL-160 <https://www.courts.ca.gov/documents/fl160.pdf> [as of Dec. 24, 2020] (hereafter Form FL-160).

debts and serve the other party with this information "either concurrently with the petition for dissolution or legal separation, or within 60 days of filing the petition." (Fam. Code, § 2104, subd. (f); see also Fam. Code, §§ 2103, 2110; Judicial Council Forms, form FL-140 <https://www.courts.ca.gov/ documents/fl140.pdf> [as of Dec. 24, 2020]; Judicial Council Forms, form FL-142 <https://www.courts.ca.gov/documents/ fl142.pdf> [as of Dec. 24, 2020].) It is thus unclear that when marital dissolutions end in defaults, the disclosures required are anything less than what is required by section 580.

Plaintiff also seeks to rely on *Cassel*, *supra*, 76 Cal.App.4th 1157. *Cassel* extended *Andresen* to the context of an accounting action, holding that "in an action seeking to account for and value a former partner's partnership interest and for payment of that interest, the complaint need only specify the type of relief requested, and not the specific dollar amount sought." (*Id.* at pp. 1163–1164.) The court in *Cassel* may have been persuaded by the facts of the case, which, as alleged, led the court to conclude that the defendant was "armed with [such] information" that it "could precisely calculate the amount for which it would be liable if it chose to default." (*Id.* at p. 1163.) Under such circumstances, the court reasoned that complaints for accounting need not state "the specific dollar amount sought" in order to satisfy section 580, because there is no foreseeable "danger that defaulting defendants will be taken by surprise by judgments entered against them, [since], like spouses facing property division, they will be in possession of the essential information necessary to calculate their potential exposure." (*Cassel,* at p. 1164.)

Adherence to this aspect of *Cassel* has been spotty in the decades since it was decided. Of the two published opinions that have seemingly endorsed *Cassel*, both narrowed *Cassel*'s holding so it did not apply to the facts of their case. (*Warren*, *supra*, 240 Cal.App.4th at p. 375 ["Although we agree with cases finding that a plaintiff in an action for accounting need not give notice of damages before a defendant's default is entered, we also find that an exception to that rule applies: where, as here, plaintiff knew what his damages were and defendants did not have access to that information, notice must be given before default is entered"]; *Schwab v. Southern California Gas Co.* (2004) 114 Cal.App.4th 1308, 1326 [*Cassel* "is a limited exception to the statutory notice provisions, which does not apply in the present case"].)

Other Courts of Appeal, including the court below, have flatly refused to follow *Cassel*. (*Sass*, *supra*, 32 Cal.App.5th at p. 1043 [joining "the growing majority of cases rejecting *Cassel*"]; *Van Sickle*, *supra*, 196 Cal.App.4th at p. 1527 ["we reject *Cassel*"]; *Finney*, *supra*, 111 Cal.App.4th at pp. 541–542 ["the rationale of *Cassel* runs counter to the primary purpose of section 580 of ensuring notice and fundamental fairness"]; see also *Ely*, *supra*, 224 Cal.App.3d at pp. 1263–1264 [a decision preceding *Cassel* with which *Cassel* disagrees but other Courts of Appeal have continued to follow].)

We do not find *Cassel* persuasive.[12] If all that is needed to satisfy section 580 is a lack of surprise to the defendants, then

---

[12]    We disapprove of *Cassel v. Sullivan, Roche & Johnson,* *supra*, 76 Cal.App.4th 1157 — and the two cases following it, *Warren v. Warren, supra*, 240 Cal.App.4th 373 and *Schwab v.*

there would be no reason to insist on formal notice of potential liability. Actual notice should suffice. After all, when a defendant actually *knows* what is owed, there is no "danger" of surprise by a default judgment. (*Cassel*, *supra*, 6 Cal.App.4th at p. 1164.) Yet, this is not our law. (See, e.g., *Greenup*, *supra*, 42 Cal.3d at p. 826 ["due process requires formal notice of potential liability; actual notice may not substitute for service of an amended complaint"]; *Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1019 ["courts have set aside default judgments that award more damages than requested in the complaint even where a defendant had *actual notice* of the damages the plaintiff sought"]; *Stein v. York* (2010) 181 Cal.App.4th 320, 326 ["Plaintiff argues defendant received notice of the potential damages that could be entered against him by virtue of his [participation in this action]. This argument does not persuade because constructive notice of potential liability does not satisfy section 580."].)

At its core, *Cassel* pointed to nothing other than a relative informational imbalance between plaintiffs and defendants in accounting actions to justify its holding. (*Cassel*, *supra*, 76 Cal.App.4th at p. 1163.) As we previously explained, however, this is not enough.

Plaintiff alternatively argues that "even if the relevant statutes are read to require notice of a sum certain, an exception is warranted" for "accounting actions seeking equal division of specified assets in the defendant's hands." As a preliminary matter, we note that courts have no power to act in

---

*Southern California Gas Co.*, *supra*, 114 Cal.App.4th 1308 — to the extent they are inconsistent with our opinion.

contravention of the relevant statutes, especially when those statutes delimit their jurisdiction. (See *Burtnett*, *supra*, 33 Cal.2d at p. 807 ["[T]he court's jurisdiction to render default judgments can be *exercised only in the way authorized by statute*. It cannot act except in a particular manner, that is, by keeping the judgment within the bounds of the relief demanded."].)

At the heart of plaintiff's argument, however, is a contention that we must address — if only to ultimately reject. The contention is that, regardless of how close they hew to the statutory text, accounting complaints that identify the assets in defendants' possession and request half of their value give the defaulting parties "adequate notice of the maximum judgment that may be assessed against them." (*Greenup*, *supra*, 42 Cal.3d at p. 826.) And, the argument goes, that is all section 580 requires.

Although we have said that "[n]otice is at the heart of the provision[s]" governing default, we have never endorsed the idea that these provisions are necessarily satisfied whenever notice has been given. (*Greenup*, *supra*, 42 Cal.3d at p. 827.) "The statutes are very specific in their requirements for a judgment following a default" (*Burtnett*, *supra*, 33 Cal.2d at p. 806), and by their terms, they require that relief granted in default cannot exceed "that demanded in the complaint" (§ 580, subd. (a)) or "the amount stated in the complaint" (§ 585, subd. (b)). At the very least then, the provisions require not mere notice, but notice of a specific type: that of the amount requested. Put differently, plaintiff has not persuaded us that the requirements of the default statutes and the demands of due process for notice are coterminous.

Furthermore, we can draw no principled line that would allow us to say that plaintiff's pleading gives Cohen adequate notice without opening the door to "speculation" regarding whether functionally equivalent pleadings would also satisfy the due process notice requirement embedded in section 580. (*Becker*, *supra*, 27 Cal.3d at p. 494.) In this case, plaintiff asks for half the value of the assets in Cohen's possession. If a request for a one-half share gives a defendant adequate notice of the maximum judgment that may be taken, then perhaps a demand for a rightful share should be adequate as well — at least when the rightful share in the circumstances presented may be exactly one half. Yet, whether we may presume that individuals sued will know that the law as applied to the facts of their case will translate "rightful share" to "one-half share" is not at all clear. Similarly, the question of whether we may assume that defendants know (or can readily determine) the value of any asset in their possession — no matter how esoteric, little transacted, or subject to differing, and perhaps subjective, valuations — is fraught as well. In short, this is an area where due process may be best protected by a bright-line rule, one that states that if an individual requests money damages in a default judgment, the individual must have demanded an amount of said money in the operative pleadings.

Finally, plaintiff argues that requiring litigants to plead a specific amount of damages will simply tempt them into naming "exorbitant figures" in their complaints. Although we cannot guarantee that no plaintiff will fall prey to such reckless pleading, we believe a countervailing consideration is at play. A pleading of potential damages affords a defendant notice, which "enables [the] defendant to exercise his right to choose" whether to default. (*Greenup*, *supra*, 42 Cal.3d at p. 829.) The

higher the figures an individual names in a complaint, the less likely it is that the defendant will "giv[e] up his right to defend." (*Ibid.*)  Thus, insofar as litigants think of defaults as an easy win,[13] they make the possibility of such a win more remote by pleading "exorbitant figures."

Furthermore, should a plaintiff provide an amount of damages at the high end of estimates, this may have the benefit of incentivizing a defendant to participate in the litigation, and thus serving the law's preference to resolve litigation on the merits.  (See, e.g., *Weitz, supra*, 63 Cal.2d at p. 854; *Waybright v. Anderson* (1927) 200 Cal. 374, 377; *Berri v. Rogero* (1914) 168 Cal. 736, 740.)  As we have discussed, a plaintiff may also amend a complaint in advance of a prove-up hearing in order to increase potential relief available through a default award. A defendant may choose to participate if the increased relief proves steep enough, and this, too, vindicates the judicial preference to resolve litigation on the merits.

In short, individuals face various incentives in drafting complaints, and we do not think that our holding here is likely to warp their decisionmaking.  To the extent our ruling might in practice push some plaintiffs to increase estimates of their damages, such a change in behavior is not without benefit — as it may well encourage defendants to answer the complaints and thus put the litigation on track to be resolved on the merits.

---

[13]     But see, e.g., *Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 868 [emphasizing that trial courts must "act as gatekeeper[s]" in default situations, "ensuring that only the appropriate claims get through"]; *Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1013–1014 [similar].

## B. Remaining Contentions

After concluding — as we do — that the default judgment in this case violated section 580, the Court of Appeal proceeded to address and resolve an additional issue. The Court of Appeal considered a situation in which "a plaintiff has specifically enumerated separate items of compensatory damages in her complaint" and asked, "[H]ow [under such circumstances] is a court to assess whether the amount of such damages obtained in a default judgment exceeds the amount demanded in the complaint? Is the court to undertake this inquiry on an item-by-item basis (comparing the amount awarded in the default judgment for each item against the amount demanded *for that item* in the complaint)? Or is the court instead to conduct a more aggregated inquiry (comparing the *total* default judgment to the *total* amount demanded in the complaint)?" (*Sass*, *supra*, 32 Cal.App.5th at p. 1044.)

We observe that the issue the Court of Appeal identified arises in only a limited set of circumstances. Cohen concedes that had plaintiff "simply asserted the total amount she sought in the complaint's prayer," that total amount would set the ceiling on the sum recoverable in default. If that is true, then when the prayer for relief includes a total amount demanded, there would be no question concerning the maximum sum the trial judge may grant in default and, as such, no question as to how a court should compare the default judgment against the demand. Furthermore, even when a plaintiff fails to "assert[] the total amount she sought in the complaint's prayer," the proper method of comparison is an issue only when some of the plaintiff's claims (or items within a claim) are ultimately unrecoverable.

Such circumstances were not presented here. The trial court in this case calculated its damage awards *without regard* to the amounts demanded in the operative complaint. When Cohen later challenged the amount of monetary damages awarded in the default judgment, the court cited *Cassel* and explained that when a plaintiff alleges a cause of action for accounting, "there is no notice requirement for damages sought before entry of default judgment." This was incorrect, but the trial court's calculation did not implicate the issue of how the default judgment should be compared against the complaint. In the court's view, no comparison was necessary because plaintiff did not need to put Cohen on notice of the "damages sought before entry of default judgment" by including such a figure in the complaint.

The Court of Appeal's calculation of damages likewise does not tread on the issue — but for a different reason. Based on the allegation that she "brought to" Tag $1.4 million, the appellate court awarded plaintiff $700,000 as her half share of Tag's value. According to the Court of Appeal, plaintiff "demanded $700,000 for the value of Tag" and thus could be granted this amount in default. (*Sass, supra*, 32 Cal.App.5th at p. 1046.) An examination of the complaint, however, reveals that plaintiff did not demand $700,000 as her entitlement to the value of Tag. Instead, she demanded $700,000 as part of her fraud claim, alleging that Cohen had falsely promised he would give her "equity in Tag" (*id.* at p. 1036) and that this misrepresentation caused her to "suffer[] actual damages," including "at least the sum of $700,000, which represents 50% of the revenue brought to Tag by Plaintiff." The revenue that plaintiff, a single employee, generated for Tag — with no mention regarding the cost of generating that revenue — has no

clear and defensible relation to the actual value of the company. In short, plaintiff never alleged a figure for "the value of Tag." (*Id.* at p. 1046.) The question thus is whether she may recover her half share of Tag's value despite never alleging what that value may be.

This question may be taken up by the trial court when, in accordance with the Court of Appeal's order, the case is remanded to it. We thus affirm the Court of Appeal's decision without passing judgment on whether an aggregate approach or a claim-by-claim (or item-by-item) basis is the proper method for comparing an amount demanded in a complaint to an amount awarded in default.

### III. CONCLUSION

We hold that a plaintiff alleging an accounting action must plead a specific dollar amount to support a default judgment awarding monetary relief. We express no view on the proper method — whether that be on a claim-by-claim (or item-by-item) or an aggregate basis — for comparing the amount granted in default with the amount demanded in the complaint. Because the Court of Appeal's opinion accords with our own holding here, we affirm its judgment.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**
**GUERRERO, J.\***

---

\*      Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Sass v. Cohen

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted**  XXX 32 Cal.App.5th 1032
**Rehearing Granted**

_____

**Opinion No.** S255262
**Date Filed:** December 24, 2020

_____

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  Frederick C. Shaller

_____

**Counsel:**

Snell & Wilmer, Keith M. Gregory, Daniel G. Seabolt and Todd E. Lundell for Defendant and Appellant.

Law Offices of Robert S. Gerstein, Robert S. Gerstein; Law Offices of James P. Wohl, James P. Wohl and Eileen P. Darroll for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Todd E. Lundell
Snell & Wilmer L.L.P.
600 Anton Blvd., Suite 1400
Costa Mesa, CA 92626
(714) 427-7000

Robert S. Gerstein
Law Offices of Robert S. Gerstein
171 Pier Avenue, #322
Santa Monica, CA 90405
(310) 820-1939