Filed 1/23/24  Archer v. Johnson CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOHN S. ARCHER, et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>AARON LEMAR JOHNSON, et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B322083<br>(Super. Ct. No. 56-2019-00533922-CU-NP-VTA)<br>(Ventura County) |

John S. Archer and Richard Ongania (appellants) appeal from the judgment following a court trial.  Appellants and respondent entered into an oral partnership agreement to create a computer software system used in home inspections. Appellants filed a complaint against respondent and his limited liability company, AaceSystems LLC, alleging, inter alia, causes of action for breach of an oral partnership agreement, declaratory

relief, and for an accounting.[1]  They allege respondent sold the software to users without sharing profits with them.

The trial court found in favor of appellants on the breach of oral agreement cause of action, awarded nominal damages, and ordered that partnership law would apply from that point forward.  It denied appellants' cause of action for an accounting.  Appellants contend the trial court erred in ruling that partnership law only applied to the partnership "'moving forward'" and refusing to order an accounting.  We affirm.

*Factual and Procedural Background*

Appellants are certified home inspectors.  Prior to 2010, they used an inspection software called "System 2000."  The system allowed users to collect and manage data, including narratives from home inspectors such as appellants.  Those narratives, otherwise referred to in the industry as "comments," were then used to generate inspection reports.

The software was outdated, cumbersome, and not user-friendly.  In 2010, appellants hired respondent to modernize System 2000, including adding new features and incorporating the vast library of comments appellants had created over the years into System 2000's existing library of comments.  The modernized version of System 2000 was named, "Spectacular."

By March 2011, an operable version of Spectacular was ready for use.  Appellants believed Spectacular was so good that they could sell the software to fellow home inspectors.

Although appellants possessed industry-specific experience, they lacked the technical capability to modify and further develop the software.  Appellants contacted respondent and offered him a

---

[1] AaceSystems LLC defaulted in the underlying case and is not a party to this appeal.

2

three-way partnership for ownership and operation of Spectacular.  Respondent agreed and the parties consummated their agreement with a handshake.

Pursuant to their partnership agreement, appellants were responsible for instructing respondent on the layout and form of the software to improve usability.  They were also responsible for providing the comments, conducting field testing, and for marketing Spectacular to fellow home inspectors at conferences.  Respondent was responsible for developing the software as the code writer.

Appellants and respondent met with a legal consultant who advised them to create a limited liability company to hold ownership of the software and the business.  The parties agreed to use respondent's previously formed company, AaceSystems LLC.

Throughout 2011 and 2012, appellants and respondent worked together to improve the functionality of the software.  When Spectacular was ready for sale to home inspectors, appellants and respondent marketed the software at home inspector meetings and conventions.

Appellants and respondent held themselves out as "partners" and routinely used collective language such as "we" and "us" in their internal communications, particularly when referring to Spectacular business and future profits.  Appellants also exercised control over the day to day business operations, including setting the price for Spectacular's licenses and determining user content.

In August 2018, respondent gave a presentation at a home inspector meeting where appellants were also present.  When an audience member inquired about the number of Spectacular

sales, respondent stated that he had sold 1500 units. Appellants were shocked because respondent had indicated to them that business was slow and things were not selling that well.

In October 2018, the parties met at a local café. Mr. Archer informed respondent that he wanted to fund his trust with his one-third ownership interest in Spectacular and asked respondent to give him a copy of the LLC agreement with his name on it to include in the trust. Respondent denied that appellants had any ownership in Spectacular and subsequently terminated their access to Spectacular.

In September 2019, appellants filed a complaint against respondent and AaceSystems LLC, alleging among other claims, breach of an oral agreement. Appellants requested declaratory relief and an accounting.

No evidence was produced at trial as to how many units of Spectacular were sold. Following a court trial, the trial court issued an oral tentative decision. The trial court found in favor of appellants on their claim for breach of oral agreement, finding "the evidence is very strong that there was some sort of informal formal agreement . . . that they would be partners in this business."

The trial court found the evidence of damages to be "very spartan" and awarded only nominal damages of $100. As the trial court explained, "I certainly don't have evidence that 1500 units were sold at $599 per unit, and it would really be speculation as to what the appropriate damages would be."

The trial court denied appellant's cause of action for an accounting. As the trial court explained:

"There isn't sufficient evidence to rely on to order an accounting of - - I mean, I don't know what has been done

4

in the past, and we really didn't establish the damages other than, as I said, nominal damages. So I am not going to order an accounting to be done. So what we are left with is the declaratory relief request, which I'm granting, and that is that a partnership does exist. It's a third, a third, a third partnership. Partnership law will apply from this point forward."

## *Discussion*[2]

Appellants contend the trial court should have ordered that the partnership was created in 2011 or 2012 when the parties made their handshake agreement. Appellants also contend the trial court should have sustained the cause of action for an accounting and ordered respondent to account for the profits and losses he derived from Spectacular from the time of the partnership's formation. As we shall explain, appellants' contentions are without merit.

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. [Citations.]" (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*).)

We review the trial court's findings of fact for substantial evidence and its denial of an accounting for abuse of discretion. (*People v. Cromer* (2001) 24 Cal.4th 889, 893-894; *Heller v. Pillsbury Madison & Sutro* (1996) 50 Cal.App.4th 1367, 1392 (*Heller*).)

---

[2] No respondent's brief was filed. Accordingly, the appeal is submitted on appellants' opening brief, the record, and any oral argument by appellants. (Cal. Rules of Court, rule 8.220(a)(2).)

5

*Trial Court's Order Partnership Law Governs Moving Forward*

Appellants do not challenge the trial court's finding of a three-way partnership for the ownership and sale of Spectacular. However, they contend the trial court erred when it found that the partnership only began to exist for profit division purposes as of the time of trial. Appellants contend this finding was "unsupported by evidence and defies common sense" where "[a]ll of the acts, words and conduct that the trial court relied on as evidencing an agreement occurred years prior, culminating in a handshake between the parties in 2011 or 2012."

Here, the trial court issued its oral tentative decision pursuant to California Rules of Court, rule 3.1590(c). The tentative decision expressly stated, "[p]artnership law will apply from this point forward." The trial court instructed the parties that the tentative decision would become the statement of decision unless, within 10 days, a party specifies those principal controverted issues as to which the party is requesting a statement of decision or makes proposals not included in the tentative decision. (*Id.,* subd, (c)(4).)

Appellants did not file any response or object to the trial court's tentative decision. Consequently, they have forfeited their right to raise the issue now. (See *Arceneaux, supra,* 51 Cal.3d at pp. 1133-1134.)

The forfeiture rule applies with special force when the appealing party received the judge's tentative ruling and raised no objection to it. "It is axiomatic that a party may not complain on appeal of rulings to which it acquiesced in the lower court. . . . It is unfair to the trial judge and the adverse party to attempt to take advantage of an alleged error or omission on appeal when the error or omission could have been, but was not, brought to the

attention of the trial court in the first instance. [Citation.] . . . .
[¶] It follows that when a trial court announces a tentative
decision, a party who failed to bring any deficiencies or omissions
therein to the trial court's attention forfeits the right to raise
such defects or omissions on appeal." (*Porterville Citizens for
Responsible Hillside Development v. City of Porterville* (2007) 157
Cal.App.4th 885, 912, citing *Arceneaux, supra,* 51 Cal.3d at p.
1134.)

Even if we were to reach the merits on this issue,
appellants fail to show that the alleged error resulted in a
miscarriage of justice. (See *Lundy v. Ford Motor Co.* (2001) 87
Cal.App.4th 472, 479; Cal. Const., art. VI, § 13.)

Here, there is no evidence that appellants are entitled to
two-thirds of the profits going back to 2011 or 2012. Rather, the
evidence shows that appellants intended for respondent to keep
at least some of the profits as compensation for his work on
Spectacular. As Mr. Archer explained during his testimony, "We
never asked for a cut . . . Richard and I, considered us three-way
partners from the onset. And we never asked for money because
[respondent was] developing the product as it progressed. So . . .
any profits that were made, we just figured we would let
[respondent] keep because of [his] work." When respondent quit
his job to focus on Spectacular full time, appellants continued to
allow him to keep the profits of Spectacular sales to "compensate
him for the amount of income that he was foregoing by giving up
his job."

We conclude reversal is not warranted on this issue.

*Action for an Accounting*

As we have indicated, we review the trial court's denial of
an accounting for an abuse of discretion. (*Heller, supra,* 50

7

Cal.App.4th at p. 1392.) "'"The term [judicial discretion] implies the absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. . . ."'" (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448-1449.) A "'showing on appeal is wholly insufficient if it presents a state of facts, a consideration of which, for the purpose of judicial action, merely affords an opportunity for a difference of opinion. An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. . . .'" (*Ibid.*)

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting. [Citations.]" (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179; *Sass v. Cohen* (2020) 10 Cal.5th 861, 869 (*Sass*).) It is a "'species of disclosure predicated upon the plaintiff's *legal inability* to determine how much money, if any, is due.'" (*Teselle*, at p. 180, italics added.)

Here, the trial court expressly found there was insufficient evidence to rely on to order an accounting. As the trial court explained in its tentative decision, "I don't know what has been done in the past, and we really didn't establish the damages other than . . . nominal damages."

Appellants contend the trial court applied the wrong legal standard because "[n]either knowledge of what was 'done in the past' nor prospective establishment of damages, are recognized as necessary elements to establish appellants' entitlement to an accounting." Instead, they contend all they had to show was (1) a relationship between the parties requiring an accounting, and (2)

8

some balance is due to them that "'can only be ascertained by an accounting.'"  (Citing *Sass*, *supra*, 10 Cal.5th at p. 869 and Corp. Code, § 16405, subd. (b).)

But appellants have not sufficiently demonstrated that any balance was due or that it could *only* be ascertained by an accounting and not through some other ordinary means of discovery.  To be sure, appellants had the opportunity to conduct discovery to develop the evidence of damages or "some balance due."  The record reflects that appellants filed a motion to compel discovery and requested sanctions, however, it is unclear how the trial court resolved the matter and on what basis.  Appellants' appendix does not include the motion to compel discovery, the opposition filed by respondent, or the trial court's ruling.

"The burden of demonstrating error rests on the appellant. [Citation.]" (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.)  To meet this burden, the appellant must provide an adequate appellate record to assess error.  "Failure to provide an adequate record on an issue requires that the issue be resolved against" the appellant.  (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.)

Notwithstanding any discovery dispute, appellants had the opportunity to examine respondent under oath.  They presented evidence that at least some units of Spectacular were sold.  But, Spectacular can be bought for a day, a single use, a month, the entire year, or as a renewal at a discounted price.

Like the trial court, we have no evidence as to how many units of Spectacular were sold, or in what form, and at what price.  Appellants are not now entitled to an accounting based on their own failure to carry their burden of proof in the first instance.  (See Evid. Code, §500 [a party has burden of proof as to

9

facts essential to his or her claim for relief]; 1 Witkin, Cal. Evidence (6th ed. 2023) Burden of Proof and Presumptions, § 10, p. 166 [same].)

The trial court considered all of the evidence presented, found it "very spartan" and insufficient to show that any "past damages" occurred. It was not an abuse of discretion for the trial court to then conclude that appellants' failure to prove past damages necessarily precluded them from demonstrating some balance was due.

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.


We concur:


BALTODANO, J.


CODY, J.

Benjamin F. Coats, Judge
Superior Court County of Ventura

_____

Ferguson Case Orr Paterson and Joshua S. Hopstone,
Morgan T. Lynch, for Plaintiffs and Appellants.

No appearance for Respondents.