Filed 7/24/24  Kaneko v. Masui CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SABINE KANEKO,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>TOSHIO MASUI,<br><br>Defendant and Respondent. | B319096<br><br>(Los Angeles County<br>Super. Ct. No. SC025245) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark H. Epstein, Judge.  Affirmed.

Law Offices of Edward A. Hoffman and Edward A. Hoffman for Plaintiff and Appellant.

No appearance by Defendant and Respondent.

This appeal, the third we have been called to decide in this action, stems from another attempt by defendant and respondent Toshio Masui (Toshio) to attack the default judgment Erika Kaneko (Erika) obtained against him in 1996. Most recently in the trial court, Toshio filed a motion to vacate the default and default judgment and argued they were void because the judgment awards damages in excess of those demanded in the operative complaint—specifically, an award of $250,000 in punitive damages. The trial court agreed, vacated the default judgment, and gave plaintiff and appellant Sabine Kaneko (Sabine), Erika's daughter and successor, the choice of vacating the entry of default and proceeding with the case or obtaining a new default judgment in an amount consistent with the complaint. Sabine chose the latter, but she also filed a motion to set aside the trial court's order vacating the default judgment. The trial court denied that motion, and in this appeal therefrom, we are principally asked to consider whether Toshio had sufficient notice of the request for punitive damages and, if not, whether the default judgment was accordingly void or merely voidable.

## I. BACKGROUND

### A. The Complaints

Erika filed her initial form complaint in this matter in July 1993. It alleged three causes of action against Toshio: fraud, breach of contract, and common counts. The complaint also included an exemplary damages attachment that generally alleged Toshio was guilty of malice, fraud, and oppression. The complaint prayed for damages in the amount of $229,407, interest and attorney fees according to proof, $750,000 in

2

punitive damages, and such other legal and equitable relief as the court deemed just and proper. Toshio filed a form answer to this original complaint, asserting a general denial.

Erika then filed a first amended complaint (the operative complaint) in May 1994, which named two additional defendants: Hideaki Masui (Toshio's father) and H. Masui and Company (the Company). The operative complaint asserted all three causes of action pled in the original complaint plus new claims for concealment, conversion, and additional common counts against all defendants. It again included an exemplary damages attachment that generally stated defendants were guilty of malice, fraud, and oppression. The operative complaint sought damages in the amount of $229,407, interest and attorney fees according to proof, punitive damages, and further legal and equitable relief as the court deemed just and proper. It did not identify the amount of punitive damages it sought.

The substance of the operative complaint alleged Erika loaned money to Toshio to invest in real estate, Toshio did not invest the money as promised, and he did not return the money.

B.    *Entry of Default and Proceedings Leading to the Two Prior Appeals*

In September 1994, some four months after the operative complaint was filed, Erika filed a request for entry of default against Toshio and the Company because neither had filed a response to the operative complaint. Default was entered by the clerk against both defendants the same day.

Approximately one year later, on September 18, 1995, Erika served a statement of damages on Toshio, asserting she was seeking special damages in the amount of $229,407 (plus

3

interest) and $250,000 in punitive damages. She filed the statement on September 27, 1995.

In early 1996, Erika filed a request for entry of a default judgment. The trial court held a hearing and entered a default judgment against Toshio, Toshio's father, and the Company. The court awarded Erika the $229,407 demanded in the complaint, interest through December 31, 1995, in the amount of $155,280.40, daily interest from January 1, 1996, through the date of judgment in the amount of $5,340.55, punitive damages in the amount of $250,000, and costs in the amount of $308.

As discussed in more detail in one of this court's prior opinions in this matter, *Kaneko v. Masui* (Sept. 29, 2017, B275389) [nonpub. opn.], Erika renewed the judgment in 2006 and Sabine renewed it again in 2015 as Erika's successor in interest. Toshio moved to vacate the renewed judgment later that year, the trial court denied his motion, and we affirmed the denial. (*Id.* at pp. 4-6.)

In 2017, Toshio moved to vacate the 1994 entry of default and the 1996 default judgment, arguing the default was incompatible with due process because he had filed an answer denying the allegations of Erika's original complaint. We held the default judgment against Toshio was valid because the differences between the original complaint and the operative complaint were substantive and changed the cause of action Erika alleged against Toshio. (*Kaneko v. Masui* (April 3, 2020, B291825) [nonpub. opn.].)

4

C.     *Toshio's October 2020 Motion to Vacate the Default Judgment*

In October 2020, Toshio filed a new motion to vacate the judgment, this time arguing the default and default judgment were void because the amount awarded for punitive damages and prejudgment interest exceeded the amount demanded in the operative complaint, which stated no dollar figure for either category.  Toshio also argued he had not been served with any document that identified those amounts until after the entry of his default.

Sabine opposed the motion, arguing Toshio had received notice of the amount of punitive damages sought through the original complaint and was bound by a judicial admission that he believed the case was defined by the original complaint when default and default judgment were entered.  Sabine further argued the default was valid even if the default judgment was not, and the remainder of the judgment was valid even if the punitive damages award was not.  Finally, Sabine argued the doctrines of laches and res judicata prevented the court from granting the motion.

The court held a hearing on the motion and invited Sabine to file a brief regarding asserted changes in the law.  Sabine submitted supplemental briefing in which she argued Code of Civil Procedure section 425.115, a statute that provides a mechanism for a plaintiff to provide a defendant with notice of the amount damages the plaintiff is seeking when prohibited from pleading a damages amount in the complaint, did not take effect until January 1, 1996—long after defendants' default was

5

entered and just days before entry of the default judgment.[1] At a minimum, in Sabine's view, the allegation of the amount of punitive damages in the original complaint was sufficient to provide Toshio with notice because section 425.115 had not been enacted at the time his default was entered.

The court held another hearing and ultimately granted Toshio's motion to vacate the default judgment, though it denied his motion to vacate the entry of default. The court found the default judgment could not stand because the amended complaint did not allege an amount of punitive damages sought and Erika had not served a statement of damages until after default was entered against Toshio. Because the court determined the default need not be vacated, Sabine elected to have the court enter a default judgment consistent with the existing complaint, i.e., without an award of punitive damages, rather than vacate the default and allow Toshio to answer and defend the case.

> D. *Sabine's Subsequent Motion to Set Aside the Trial Court's Order*[2]

Sabine filed a motion to set aside the trial court's order granting Toshio's motion to vacate the default judgment. She argued the order was entered in error because the 1996 judgment was merely voidable, not void, and the time had long since run

---

[1] Undesignated statutory references that follow are to the Code of Civil Procedure.

[2] Following the April 2021 order, Toshio also filed a motion to vacate the default on the ground of attorney mistake, surprise, inadvertence, or excusable neglect, which the trial court denied. The order denying that motion is not at issue in this appeal.

for Toshio to seek to vacate a voidable judgment. Toshio opposed the motion, arguing the judgment was void and the trial court's order was correct.

The trial court denied Sabine's motion to vacate its prior order. It disagreed with Sabine's argument that the judgment was merely voidable, concluding a default judgment that exceeds the amount of damages specified in the operative pleading is void. The court explained the judgment roll disclosed the problem with the 1996 default judgment and it was improper on its face.

## II. DISCUSSION

The trial court did not err. For an award of damages in a default judgment to be proper, a defendant must have received formal—not just actual—notice of the amount being sought before entry of default. Because the amended complaint included no such allegation (appropriately so, but that doesn't matter) and because Erika did not serve Toshio with a statement of damages until after default was entered, he did not receive the requisite notice. The punitive damages allegation in Erika's original complaint, which was superseded when she amended it, did not suffice. Because the default judgment thus awarded damages in excess of the amount pleaded in the operative complaint, it was void; it awarded relief the trial court had no authority to grant.

### A.    *Legal Background*

Section 580 addresses the relief that can be awarded to a plaintiff in a default judgment. As pertinent here, it provides that where a defendant defaults, "[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in

7

the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115." (§ 580, subd. (a).)

"The purpose of the statement of damages (under § 425.11 or § 425.115) is to notify a defendant of the amount of damages sought where the law prevents the plaintiff from including a specific amount in the complaint." (*Dhawan v. Biring* (2015) 241 Cal.App.4th 963, 969.) Plaintiffs seeking punitive damages are prohibited from quantifying their demand in the complaint. (Civ. Code § 3295, subd. (e) ["No claim for exemplary damages shall state an amount or amounts"]; *Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 398; see also *Dhawan, supra*, at 969 ["The statement provided for by section 425.115 ensures that a 'plaintiff preserves the right to seek punitive damages pursuant to Section 3294 of the Civil Code on a default judgment.' [Citation]"].)

"When section 580 is read in conjunction with sections 425.11 and 425.115, the prohibition imposed by section 580 is apparent: The amount of monetary relief awarded in default— whether as compensation in personal injury or wrongful death actions or as punitives—cannot exceed the amount demanded in the statement of damages." (*Sass v. Cohen* (2020) 10 Cal.5th 861, 876.) Thus, "in cases in which a plaintiff seeks money damages, section 580 limits a plaintiff's relief in default to the dollar amount that has been demanded in the operative pleading." (*Id.* at 878.)

"[T]he primary intent of [section 580] 'is to insure that defendants in cases which involve a default judgment have adequate notice of the judgments that may be taken against them.' [Citation.]" (*Sass, supra*, 10 Cal.5th at 873.) "It is fundamental to the concept of due process that a defendant be

8

given notice of the existence of a lawsuit and notice of the specific relief which is sought in the complaint served upon him. The logic underlying this principle is simple: a defendant who has been served with a lawsuit has the right, in view of the relief which the complainant is seeking from him, to decide not to appear and defend. However, a defendant is not in a position to make such a decision if he or she has not been given full notice." (*In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1166.)

### B. Toshio Did Not Receive Formal Notice of the Punitive Damages Amount

"[A]n amendatory pleading supersedes the original one, which ceases to perform any function as a pleading." (*Meyer v. State Bd. of Equalization* (1954) 42 Cal.2d 376, 384; see also *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884; *Darsie v. Darsie* (1942) 49 Cal.App.2d 491, 493-494.) Accordingly, "an appellate court will not [ordinarily] consider the allegations of a superseded complaint . . . ."[3] (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 209.)

As already discussed, section 580's limitation on the availability of damages in a default judgment is based on due process principles. And "due process requires formal notice of potential liability; actual notice may not substitute . . . ." (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826; see also *Sass, supra*, 10 Cal.5th at 873 [stating our high court had previously

---

[3]     There are, of course, exceptions to this rule. (See, e.g., *Save Lafayette Trees v. East Bay Regional Park Dist.* (2021) 66 Cal.App.5th 21; *Walton v. Guinn* (1986) 187 Cal.App.3d 1354, 1360.) But no exception applies here.

9

"made clear" a defendant must receive "'formal notice,'" which could not be "supplanted by 'actual notice'"]; *Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1019 ["Section 580 requires *formal* notice of damages . . . and does not consider whether a defendant had actual or constructive notice"]; *Dhawan*, *supra*, 241 Cal.App.4th at 970 ["case law favors a strict interpretation of section 580's requirement that a defendant be given formal notice"].)

Here, Erika's operative complaint did not identify the amount of punitive damages she sought. While she served a statement of damages on Toshio, the record reflects she did not do so until after his default was entered. That was too late: "the statement contemplated by section 425.115 must be served 'upon the defendant . . . before a default may be taken.' [Citation.]" (*Sass, supra*, 10 Cal.5th at 870.) Because no statement of damages was timely served on Toshio, the relief Erika could receive via default judgment could not "exceed that demanded in the complaint." (§ 580, subd. (a).) The 1996 default judgment improperly exceeded that amount by awarding $250,000 in punitive damages.

It is no response to say, as Sabine does, that the original complaint provided Toshio with sufficient notice of the potential punitive damages award in the case. As we have already explained, it is well established that actual notice does not suffice; only formal notice does. Sabine also contends notice could not have been invalidated retroactively by the mere filing of the operative complaint, which did not portray Toshio in a less culpable light. The response to that point is largely the same. Only formal notice suffices, and allegations in a superseded complaint are insufficient to provide formal notice of damages

10

sought in a since amended complaint upon which the entry of default and a default judgment were obtained.

### C. *The Default Judgment Was Void*

"A void judgment can be attacked at any time by a motion under Code of Civil Procedure section 473, subdivision (d), or by a collateral action." (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 830.) A voidable judgment, in contrast, may only be set aside under section 473, subdivision (b) within six months of entry, "if the judgment was entered as a result of 'mistake, inadvertence, surprise, or excusable neglect.' [Citation.]" (*Dhawan*, *supra*, 241 Cal.App.4th at 973.) Sabine contends the default judgment was merely voidable and not void, and the trial court thus erred in vacating the default judgment more than two decades after it was entered.

As another panel of this court decided in a similar case, Sabine's argument is "at odds" with "[t]hose cases that consider default judgments awarding damages in violation of section 580[, which] have consistently viewed the judgments as void . . . and subject to collateral attack at any time." (*Dhawan*, *supra*, 241 Cal.App.4th at 974 [collecting cases]; see also *Sass*, *supra*, 10 Cal.5th at 863 ["'in all default judgments the demand [in a complaint] sets a ceiling on recovery,' and a judgment purporting to grant relief beyond that ceiling is void for being in excess of jurisdiction"]; *Lippel*, *supra*, 51 Cal.3d at 1167 ["section 580 is to be interpreted, in accordance with its plain language, to deprive a trial court of jurisdiction to enter a judgment against a defaulting defendant which awards greater relief than that sought in the plaintiff's complaint"]; *Greenup*, *supra*, 42 Cal.3d at 826 ["a default judgment greater than the amount specifically demanded

11

is void as beyond the [trial] court's jurisdiction"]; *Airs*, *supra*, 23 Cal.App.5th at 1021 [judgments that violate section 580 are void, not merely voidable]; *Behm v. Clear View Technologies* (2015) 241 Cal.App.4th 1, 9 ["a default judgment entered with a damages award higher than the amount either enumerated in the complaint or stated in a notice made pursuant to section 425.115 is void"].)  Though Sabine attempts to distinguish *Greenup*, *supra*, 42 Cal.3d 822 and *Sass*, *supra*, 10 Cal.5th 861 because they include no discussion of voidability, neither opinion is an aberration in the Supreme Court's line of cases in this arena—which, as we have already discussed, repeatedly refer to such judgments as void, not voidable.

Sabine also offers several other unpersuasive counterarguments.  She contends defects in a judgment entered by a court that has fundamental jurisdiction may only be voidable, not void.  However, "[e]ven where there is jurisdiction over the parties and the general subject matter, fundamental jurisdiction may be absent when a trial court purports to grant relief that it has no authority to grant."  (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 538; see also *Paterra v. Hansen* (2021) 64 Cal.App.5th 507, 535; *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 20.)  That is what occurred here. Sabine also asserts a judgment that awards a type of damages the plaintiff sought, but in a greater amount than was sought, is voidable rather than void.  She contends the controlling authority on this issue is *Cohen v. Cohen* (1906) 150 Cal. 99, a divorce case in which our high court held, despite the plain language of section 580, that a default judgment that gave relief in an amount exceeding the demand in the complaint was not void "in a

12

case where the relief given is within the terms of a prayer for general relief and is germane to the cause of action stated . . . ." (*Cohen v. Cohen* (1906) 150 Cal. 99, 102.) *Cohen*, however, was overruled by *Lippel*, *supra*, 51 Cal.3d 1160, and our Supreme Court more recently reviewed its own cases interpreting section 580 in *Sass*, *supra*, 10 Cal.5th 861. *Sass* explains "section 580 has been interpreted strictly, 'in accordance with its plain language,' in conformance with its purpose, and as informed by other statutory provisions governing default. [Citation.] Applying such a construction, we have never (outside the marriage dissolution context) upheld a default judgment under section 580 that awarded compensatory damages in excess of the dollar amount demanded in the operative pleading." (*Sass*, *supra*, 10 Cal.5th at 874.) Thus, contrary to Sabine's contention that *Lippel* did not undermine *Cohen's* applicability outside of the divorce context, *Sass* makes clear the exception articulated in *Cohen* never had any applicability outside of that context—and it would not apply here even if it were still good law.

D.     *The Court Had the Authority to Vacate the Default Judgment*

Sabine argues the trial court lacked jurisdiction to vacate or modify the default judgment because the judgment became final decades ago. However, as we have already stated, "[a] void judgment can be attacked at any time by a motion under Code of Civil Procedure section 473, subdivision (d), or by a collateral action." (*Falahati*, *supra*, 127 Cal.App.4th at 830.) Because we have concluded the default judgment was void, the trial court was permitted to consider and rule on Toshio's motion to vacate it. (*Southern Cal. White Trucks v. Teresinski* (1987) 190 Cal.App.3d

13

1393, 1407-1408 [holding courts also have inherent power to vacate void judgments].)

## DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM, J.

14